## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

REGIS REYMON MADISON,

     Petitioner,

v.                                  Case No.  3:18-cv-237-LC-MJF

MARK S. INCH,[1]

     Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner Regis Madison has filed an amended petition for writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 5). Respondent ("the State") filed an answer, providing relevant portions of the state court record. (Doc. 15). Madison replied. (Doc. 21). The undersigned concludes that no evidentiary hearing is required for the disposition of this matter and that Madison is not entitled to habeas relief.[2]

---

[1] Mark S. Inch succeeded Julie Jones as Secretary of the Florida Department of Corrections, and is automatically substituted as the respondent. *See* Fed. R. Civ. P. 25(d).

[2] This case was referred to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b).

## I.    Background Facts and Procedural History[3]

On the evening of January 19, 2010, Madison and his co-defendants, Justin McQueen, Dominique Hill, and Jarryd Butler, desired marijuana. McQueen had a good source—a dealer named "Jacob Boyd." The group decided to obtain the marijuana by robbing Boyd. To accomplish their mission, the four men changed into darker clothing, Madison armed himself with a sawed-off shotgun, Hill armed himself with a pistol, and they departed the Park Place Apartments for Boyd's trailer. Dominique Hill's cousin, Marguerite Hill, gave them a ride.

Robye Starnes was Jacob Boyd's neighbor. Just before Madison and his co-defendants arrived, Starnes stopped by Boyd's trailer to re-pay him some money he had borrowed. Boyd was on his way out, so he instructed Starnes to leave the money with William Warrick, who was inside the trailer.

Starnes entered the trailer and saw that Warrick was on the telephone, so Starnes waited just inside the front door. Starnes heard a knock at the door and opened it. Dominique Hill entered the trailer. Madison stood in the doorway with his

---

[3] The facts are drawn from the evidence presented at trial, viewed in the light most favorable to the State. (Doc. 15, Exs. 4-7 (trial transcript)); *see also Jackson v. Virginia*, 443 U.S. 307 (1979).

shotgun wrapped in a shirt. Jarryd Butler stood at the bottom of the porch stairs.[4] After entering the trailer, Hill walked directly to Warrick and demanded marijuana. When Warrick did not comply, Hill shot Warrick six times, killing him. Hill then grabbed a bag of marijuana and he, Madison, and Butler fled to Marguerite Hill's car. As the group drove away, Madison and Butler chided Dominique Hill for shooting Warrick. Dominique acknowledged shooting him and explained: "He tested my gangsta." During the car ride, Dominique showed everyone the bag of marijuana he stole, and he shared some with Madison. Marguerite Hill drove the men back to the apartment complex, and the group dispersed a short time later.

Within days, Marguerite Hill, Jarryd Butler, and Justin McQueen told police everything that had transpired regarding the murder, including Madison's participation. Madison was apprehended in Lafayette, Louisiana. He admitted to law enforcement that he was part of the group that went to Boyd's trailer, but he claimed that he did not know that a robbery would occur. According to Madison, he was standing at the doorway talking to Starnes when the shooting occurred.

In Santa Rosa County Circuit Court Case No. 2010-CF-0140, Madison was indicted for first-degree premediated or felony murder with a weapon (Count 1) and

---

[4] McQueen remained in the car with Marguerite Hill because he knew Boyd would recognize him.

robbery with a firearm (Count 2). (Doc. 15, Ex. 1 at 19-20).[5] Madison was tried by a jury. (Exs. 4-7). The State's witnesses included Marguerite Hill, Jarryd Butler, and Justin McQueen, who described Madison's involvement, including the fact that he carried a sawed-off shotgun during the robbery. The jury found Madison guilty as charged of first-degree felony murder with a weapon and robbery with a firearm. (Ex. 7 at 1178 (trial transcript); Ex. 3 at 471-73 (verdict)). The jury made a special finding on both counts that Madison actually possessed and carried a firearm but did not discharge it. (*Id*.). The trial court adjudicated Madison guilty and sentenced him to life imprisonment for the murder and a consecutive term of life imprisonment for the armed robbery, with a 10-year mandatory minimum. (Ex. 7 at 1182 (sentencing transcript); Ex. 3, at 480-86 (judgment)). The Florida First District Court of Appeal ("First DCA"), affirmed on August 12, 2013, *per curiam* and without written opinion. *Madison v. State*, 118 So. 3d 224 (Fla. 1st DCA 2013) (Table) (copy at Ex. 11).

On May 29, 2014, Madison filed a *pro se* motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, (Ex. 13 at 7-57), which he later

---

[5] Citations to the state court record are to the electronically-filed exhibits attached to the State's answer. (Doc. 15). If a page of an exhibit bears more than one page number, the court cites the number appearing at the bottom left corner of the page.

amended and supplemented, resulting in a second amended Rule 3.850 motion that raised five claims. (Ex. 13 at 154-88). By order entered May 18, 2015, the state circuit court set an evidentiary hearing to resolve three claims, and appointed counsel to represent Madison at the hearing. (Ex. 13 at 309-12). After conducting the evidentiary hearing, the circuit court entered a final order denying relief. (Ex. 14 at 330-569) (final order); Ex. 15 (evidentiary hearing transcript)). The First DCA affirmed *per curiam* without written opinion. *Madison v. State*, 197 So. 3d 558 (Fla. 1st DCA 2016) (Table) (copy at Ex. 19). The mandate issued September 8, 2016. (Ex. 19).[6]

On November 29, 2016, Madison filed a motion to correct illegal sentence under Florida Rule of Criminal Procedure 3.800. (Ex. 20 at 21-23). The motion was granted (Ex. 20 at 26-52), and Madison was resentenced to *concurrent* terms of life imprisonment. (Ex. 20 at 61-68). The sentencing court also eliminated the 10-year mandatory minimum for the armed robbery. (*Id*.). The First DCA affirmed on January 10, 2018, *per curiam* and without written opinion. *Madison v. State*, 238 So. 3d 222 (Fla. 1st DCA 2018) (Table) (copy at Ex. 20).

---

[6] Madison also filed a state habeas petition alleging ineffective assistance of appellate counsel, which was denied. (Ex. 11). That proceeding is not relevant to any claim raised here.

Madison filed his original federal habeas petition on February 23, 2018. (Doc. 1). Madison's amended petition raises two claims of ineffective assistance of trial counsel. (Doc. 5). The State asserts that Madison is not entitled to habeas relief because he fails to meet § 2254(d)'s demanding standard. (Doc. 15).

## II.   Relevant Legal Principles

### A.   Section 2254 Standard of Review

A federal court "shall not" grant a habeas corpus petition on any claim that was adjudicated on the merits in state court unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362 (2000).[7] Justice O'Connor described the appropriate test:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas

---

[7] Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403-13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Under the *Williams* framework, the federal court must first determine the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). After identifying the governing legal principle, the federal court determines whether the state court's adjudication is contrary to the clearly established Supreme Court case law. The adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *See Early v. Packer*, 537 U.S. 3, 8 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.").

If the "contrary to" clause is not satisfied, the federal court determines whether the state court "unreasonably applied" the governing legal principle set forth in the Supreme Court's cases. The federal court defers to the state court's reasoning unless the state court's application of the legal principle was "objectively unreasonable" in light of the record before the state court. *See Williams*, 529 U.S. at 409; *Holland v.*

*Jackson*, 542 U.S. 649, 652 (2004). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Section 2254(d) also allows habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011). As with the "unreasonable application" clause, the federal court applies an objective test. *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams*, 529 U.S. at 410). AEDPA also requires federal courts to "presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and

convincing evidence.'" *Landrigan*, 550 U.S. at 473-74 (quoting 28 U.S.C. § 2254(e)(1)).

The Supreme Court has often emphasized that a state prisoner's burden under § 2254(d) is "difficult to meet, . . . because it was meant to be." *Richter*, 562 U.S. at 102. The Court elaborated:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. *Cf. Felker v. Turpin*, 518 U.S. 651, 664, 116 S. Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Richter*, 562 U.S. at 102-03 (emphasis added).

A federal court may conduct an independent review of the merits of a petitioner's claim only if it first finds that the petitioner satisfied § 2254(d). *See Panetti v. Quarterman*, 551 U.S. 930, 954 (2007). Even then, the writ will not issue

unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

### B.    Clearly Established Federal Law Governing Claims of Ineffective Assistance of Counsel

The Supreme Court follows a two-pronged test for evaluating claims of ineffective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668 (1984). The petitioner must show that (1) his counsel's performance was constitutionally deficient, and (2) the deficient performance prejudiced him. *See id.* at 687. "First, petitioner must show that 'counsel's representation fell below an objective standard of reasonableness.' Second, petitioner must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Darden v. Wainwright*, 477 U.S. 168, 184 (1986) (quoting *Strickland*, 466 U.S. at 694).

"Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. Trial counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690.

The burden to overcome that presumption and show that counsel's performance was deficient "rests squarely on the defendant." *Burt v. Titlow*, 571 U.S. 12, 22-23 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) ("To overcome that presumption, a defendant must show that counsel failed to act reasonably considering all the circumstances." (quotation marks and alterations omitted)).

*Strickland*'s prejudice prong requires a defendant to establish a "reasonable probability" of a different trial outcome. *See Strickland*, 466 U.S. at 694. A reasonable probability is one that sufficiently undermines confidence in the outcome. *Id.* "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *See Strickland*, 466 U.S. at 698. "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 562 U.S. at 105 (citations omitted). The Supreme Court explained:

The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Id.* (citations omitted).

## III.    Discussion

**Ground One**    **"Ineffective Assistance Counsel, Where Trial Counsel Displayed Emotions In Front Of The Jury, Counsel Broke Down In Tears And Trial Was Halted, Violating Petitioner[']s 6th and 14th Amendment Rights Of The United States Constitution." (Doc. 5 at 6).**

Madison claims that he was denied his right to effective assistance of counsel when defense counsel, James Burns, became emotional during questioning of co-defendant Jarryd Butler about letters Butler wrote to the State Attorney's Office seeking a plea deal. (Doc. 5 at 6-7). The trial transcript provides the following context.

During the State's case, Butler testified about Madison's involvement in the robbery. During the defense's case, Burns called Butler to attempt to establish his bias. (Ex. 7 at 927). Burns questioned Butler about his negotiated plea agreement to reduced charges with a sentence cap. (Ex. 7 at 931-32). Burns then introduced letters

Page 12 of 30

Butler wrote to the State Attorney's Office begging for a reduced sentence and offering to testify against his co-defendants.

> **Q [MR. BURNS]**:  Can you give me an overview, if you could, and surmise what those letters were intended to elicit from the State Attorney's Office?

. . . .

> **THE WITNESS [MR. BUTLER**]:  Just, just wrote them to the _

. . . .

> **THE WITNESS**:  I wrote them to the State Attorney just, just wrote them to him.

> **Q  (BY MR. BURNS)**:  Were you asking for leniency?

> **A**:  Yes, sir.

(Ex. 7 at 935-36). Burns started reading Butler's letters to the jury.

> **MR. BURNS**:

. . . .

> Dear Mr. Williams Eddins, my name is Jarryd Butler. I'm incarcerated at the Santa Rosa County Jail for homicide and robbery. My Case Number is 2010-CF-00018A.

> The reason I am writing you is because I am innocent. There's a lot of things incorrect in my case the detectives did. First of all, I was not the shooter and the State knows that. I have four co-defendants. The only reason I was with these people is because I was gonna purchase marijuana— or "gone" purchase marijuana. I know that is bad but that

is the only reason I was with them. God told me to write you and express the truth to you of what happened.

Mr. Eddins, I will never hurt nor rob anybody, sir. The State came with a deal of 20 years. That's too much time for something I did not do. I made a mistake and was with the wrong people. We all make mistakes. I know you have made a mistake before, and somebody gave you a chance.

I do not want to go to trial but if the State do not come down off 20 years, I will, because once again I am innocent, sir.

And I know I have a very serious case and I'm sorry somebody died. I pray for the family every night. Sir—

**(Pause)**

I need a break, Judge.

**THE COURT**:  Step outside and get a drink of water.

**(Pause)**

**MR. BURNS**:  Thank you for the break.

**THE COURT**:  Sure.

**Q    (BY MR. BURNS):**

I was just writing to see if you would give me a chance and lower my sentence, time served. I'm 21 years old with two kids. I want to be in their life. I'm not a bad person like people are trying to make me out to do so.

If you look up my history you will never really be able to see I've been in trouble.

Sir, please reconsider.

**MR. BURNS**:  And if I could, Your Honor, I'd rather have him read the rest of the letters, if that's all right with you.

**THE COURT**:  All right.  Just identify which exhibit for the record.

(Ex. 7 at 938-40).  Butler read the remaining letters.  (Ex. 7 at 941-44).

Madison claims that Burns's show of emotion was deficient, and that it prejudiced him by evoking jury sympathy for the victim.  (Doc. 5 at 6-9).

### A.    Exhaustion

The parties agree that Madison presented this claim to the state courts as Ground Four of his second amended Rule 3.850 motion; that the state circuit court denied the claim on the merits in a reasoned order after an evidentiary hearing; and that the First DCA summarily affirmed without explanation.  (Doc. 5 at 9-11; Doc. 15 at 11, 17-19).  The First DCA's summary affirmance is an "adjudication on the merits" entitled to deference under 28 U.S.C. § 2254(d).  *See Richter*, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary); *id*. at 100 ("This Court now holds and reconfirms that § 2254(d) does not

require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'").

## B.    Section 2254 Review of State Court's Decision

Where, as here, there has been one reasoned state judgment rejecting a federal claim followed by a later unexplained order upholding that judgment, federal courts employ the following "look through" presumption: "[T]he federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, ___U.S. ___, 138 S. Ct. 1188, 1192 (2018). This court, therefore, must presume that the First DCA rejected Madison's claim for the reasons provided by the state circuit court.

The state circuit court's order identified *Strickland* as the controlling legal standard (Ex. 14 at 333-34), and rejected Madison's claim for these reasons:

### GROUND 4

> In Ground 4, Defendant claims that counsel was ineffective for displaying emotions in front of the jury. He alleges that counsel broke down in tears and ran out of the courtroom while reading a letter written by his codefendant Jarryd Butler. He also alleges that counsel's actions were extremely prejudicial and violated his right to a fair and impartial jury. He further alleges that, but for counsel's misconduct, the jury would have returned a not guilty verdict.

At the evidentiary hearing, counsel testified to the following. When he came into the courtroom that morning, photographs of the victim's body laying [sic] on the floor were on the projector. It was very sad. The letter he was reading was a heartfelt apology from Butler about his participation in the death of the victim. When he went to ask Butler a question, he was kind of caught off guard and teared up. He asked to be excused and walked out of the courtroom. He collected himself, came back into the courtroom, and continued questioning Butler. He was gone for less than five minutes. He did not think the incident affected his ability to present the evidence or argument that he intended to present. He did not believe it did anything to harm Defendant. If anything, it showed the jury that he was a real human being.

Based on counsel' testimony, which the Court finds more credible than Defendant's testimony, the Court concludes that Ground 4 should be denied as Defendant has not demonstrated that counsel's performance was deficient. When counsel became emotional, he took the appropriate steps to minimize what was seen by the jury and to maintain the integrity of the trial.

Assuming *arguendo* that counsel's performance was deficient, the Court would still conclude that Ground 4 should be denied as Defendant has not demonstrated that he was prejudiced. Based on the overwhelmingly inculpatory evidence presented at trial, as summarized by counsel at the evidentiary hearing, there is no reasonable probability that the outcome of the trial would have been different if counsel had not displayed emotions in front of the jury.

(Ex. 14 at 335-36) (footnotes citing to trial and postconviction evidentiary hearing transcripts omitted).

This court defers to the state court's factual findings, because they are amply supported by the record and because Madison has not rebutted them with clear and convincing evidence to the contrary. This deference extends to the state court's

determination that Attorney Burns's testimony was more credible than Madison's testimony. Eleventh Circuit precedent requires this deference. "Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review. Federal habeas courts have "no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." *Consalvo v. Sec'y for Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011) (quoting *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). The "AEDPA affords a presumption of correctness to a factual determination made by a state court; the habeas petitioner has the burden of overcoming the presumption of correctness by clear and convincing evidence." *Consalvo*, 664 F.3d at 845 (citing 28 U.S.C. § 2254(e)).

With regard to the first element of § 2254(d)(1), there is no merit to Madison's argument that the state court's decision was contrary to clearly established federal law, because the state court utilized the *Strickland* standard. The only remaining question is whether the state court's application of *Strickland* was objectively unreasonable. *See* 28 U.S.C. § 2254(d)(1).

Based on the record before the state court, the rejection of Madison's claim was a reasonable application of the *Strickland* standard. Attorney Burns described the incident in detail:

[Mr. Burns]. Well, actually I woke up that morning—I think it was about the third or fourth day of trial, and I was driving from Lillian, Alabama. I think we had to be in court every morning by nine o'clock.

I had got there, and there was some photographs of the young man that had been killed. And they were on the—they were on the projector, of his dead body laying—laying on the floor.

And I had a letter from one of the co-defendants and the co-defendant was apologizing for his—his participation in the death of Mr. Warrick. And I was questioning that co-defendant, and I was reading from the letter. And the letter kind of caught me off guard because it was actually a somewhat—what should you say? It was somewhat a heartfelt apology from the co-defendant about his participation in the death of this young man.

And when I went to ask him the question, you know, it kind of caught me off guard, you know, I teared up, you know, and then I asked Judge Rimmer if I could be excused. And I did. I walked out of the door, it was maybe 15 feet from me. I was gone for a minute or two. I collected myself, I came back in, and I continued my questioning.

(Ex. 15 at 45-46). Burns estimated that he was absent, "total time, maybe, four minutes." (Ex. 15 at 47). When asked what effect his momentary loss of composure had on the trial or on his presentation of Madison's defense. Burns testified:

I don't think it affected it at all. I presented what I needed to. I just asked for a short break. As a human being, I saw something that kind of grabbed me, you know, and I just had a short—short moment where, you know, it was sad. It was really, really sad looking at this child laying on the floor dead.

You know, I don't think it overly—I don't think it did anything to harm Mr. Madison whatsoever. If anything it let that jury know that his defense attorney was a real human being.

Page 19 of 30

(Ex. 15 at 52). The trial transcript establishes that proceedings were paused during the entirety of Burns's four-minute absence. (Ex. 7 at 938-40).

The state court's argument, that defense counsel satisfied *Strickland*'s deferential standard, is reasonable. Burns's show of emotion consisted of momentarily "tearing up." Burns responded immediately by requesting a break, stepping outside the courtroom, regaining his composure within five minutes and, upon returning, ensuring he maintained composure by having Butler read the remainder of the letters. Burns's show of emotion was a single, isolated incident over the course of a four-day trial. Fairminded jurists can concur that Burns's conduct was objectively reasonable.

Fairminded jurists also can concur in the state court's conclusion that Madison failed to meet his high burden to show that there is a reasonable probability that, but for Burns's brief loss of composure, the result of the trial would have been different. Madison contends that Burns's loss of composure prejudiced him because it caused the jury to convict him based on sympathy for the victim. (Doc. 5 at 9; Doc. 21). There is no evidentiary support for this assertion. Contrary to Madison's speculation, defense counsel emphasized during closing arguments that the jury should not base their verdict on sympathy (due to Warrick's young age) or lack of sympathy (due to

Boyd's and Warrick's marijuana dealing), but instead should base their verdict on the evidence. (Ex. 7 at 1099-1100, 1106-07, 1112). More importantly, the trial judge instructed the jury: "This case must not be decided for or against anyone because you feel sorry for anyone, or are angry at anyone." (Ex. 7 at 1149). The jury is presumed to have followed the judge's instructions. *See Kansas v. Carr*, 577 U.S. __, 136 S. Ct. 633, 645 (2016) ("We presume the jury followed these instructions . . . ."); *United States v. Olano*, 507 U.S. 725, 740 (1993) (noting that courts presume "that jurors, conscious of the gravity of their task, attend closely the particular language of the trial court's instructions in a criminal case and strive to understand, make sense of, and follow the instructions given them"); *Brown v. Jones*, 255 F.3d 1273, 1280 (11th Cir. 2001) ("We have stated in numerous cases . . . that jurors are presumed to follow the court's instructions.").

Viewing the totality of the circumstances, including counsel's conduct, the overwhelming evidence of Madison's guilt, and the trial court's instructions to the jury, Madison has not shown that but for defense counsel tearing up, there is a substantial likelihood the outcome of his trial would have been different.

Because it is not clear that the state court erred at all, much less erred so transparently that no fairminded jurist could agree with that court's decision, Madison is not entitled to habeas relief on this ground. *See Richter*, 562 U.S. at 103

("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

| | |
|---|---|
| **<u>Ground Two</u>** | **<u>"Ineffective Assistance Counsel Where Trial Counsel's Concession To The Jury That The Petitioner's Co-Defendant Had Already Been Tried And Convicted In A Previous Trial, Violated Petitioner's 6th And 14th Amendment Rights Of The United States Constitution." (Doc. 5 at 12).</u>** |

Madison claims that defense counsel was ineffective during opening statements when he told the jury: "Dominique Hill has already been tried and convicted." (Ex. 4 at 98). Madison claims that counsel's remark prejudiced him because "it is not beneficial to the Defense when the State is implying that the co-defendant and the Petitioner were both co-conspirators of the crime." (Doc. 21 at 15).

## A. Exhaustion

The parties agree that Madison presented this claim to the state courts as Ground Three of his second amended Rule 3.850 motion; that the state circuit court denied the claim on the merits in a reasoned order; and that the First DCA summarily

affirmed without explanation. (Doc. 5 at 13-14; Doc. 15 at 11, 19-22). The First DCA's summary affirmance is an "adjudication on the merits" entitled to deference under 28 U.S.C. § 2254(d). *See Richter*, 562 U.S. at 99, 100.

## B.    Section 2254 Review of State Court's Decision

Consistent with *Wilson, supra*, this court "look[s] through" the First DCA's unexplained decision to the circuit court's order denying postconviction relief, and presumes that the First DCA adopted the same reasoning. *Wilson*, 138 S. Ct. at 1192. The circuit court denied Madison's claim for these reasons:

## GROUND 3

> In Ground 3, Defendant claims that counsel was ineffective for informing the jury during his opening statement that his codefendant Dominique Hill had already been tried and convicted. He alleges that counsel's comment was highly prejudicial, erased the presumption of innocence, created a presumption of guilt, and violated his right to an impartial jury. He alleges that, but for counsel's comment, the jury would have found him not guilty.

> To establish a *prima facie* case of ineffective assistance of counsel, a defendant must satisfy both prongs of *Strickland v. Washington*, 466 U.S. 668 (1994). First, the defendant must show that counsel's performance was deficient. *Id*. at 687. This requires showing that counsel's performance fell below a standard of reasonableness under prevailing professional norms. *Id*. at 687-90. Second, the defendant must show prejudice. *Id*. at 687. This requires showing that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding should have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id*. at 687, 694. If the defendant fails to

satisfy one prong, it is not necessary to consider the other. *Id*. at 697; *see also Waterhouse v. State*, 792 So. 2d 1176, 1182 (Fla. 2001).

At the evidentiary hearing, counsel testified to the following. His concession that Hill had been tried and convicted of the robbery and murder was a tactical decision. At the time he made that decision, he knew the jury would hear testimony that Defendant participated in the robbery/murder, that Hill fatally shot the victim, that Defendant witnessed the shooting and took some of the marijuana that was stolen from the victim, and that Defendant and his codefendants admonished Hill in the vehicle when they left the scene. Additionally, in Defendant's statement to law enforcement, he admitted that he was present, but stated that he did not know a robbery was going to occur and that he was not a willing participant in the robbery/murder. Counsel's ultimate strategy was to suggest that Defendant did not know that the robbery had been planned and that Hill acted independently of any plan Defendant would have been aware of. He discussed the strategy with Defendant at the jail, and Defendant was in agreement with the strategy.

Based on counsel's testimony, which the Court finds more credible than Defendant's testimony, the Court concludes that Ground 3 should be denied as Defendant has not demonstrated that counsel's performance was deficient. In light of the overwhelmingly inculpatory evidence presented at trial, as summarized by counsel at the evidentiary hearing, counsel's tactical decision to inform the jury of Hill's trial and convictions was reasonable. *See, e.g., Harris v. State*, 768 So. 2d 1179, 1182-83 (Fla. 4th DCA 2000).

Assuming *arguendo* that counsel's performance was deficient, the Court would still conclude that Ground 3 should be denied as Defendant has not demonstrated that he was prejudiced. Based on the overwhelmingly inculpatory evidence presented at trial, as summarized by counsel at the evidentiary hearing, there is no reasonable probability

that the outcome of the trial would have been different if counsel had not informed the jury of Hill's trial and conviction.

(Ex. 14 at 333-35) (footnotes omitted).

This court defers to the state court's factual findings, including its credibility determinations. *See Consalvo, supra*. This court also defers to the state court's factual determination that counsel's decision—to tell the jury that Dominique Hill was convicted of the robbery and murder—was a strategic one made in consultation with Madison. Madison has not rebutted the state court's factual findings with clear and convincing evidence to the contrary.

Based on the state court's findings, its conclusion—that counsel's strategic decision was reasonable—was within the bounds of reasonableness under the AEDPA. Madison's defense was that he was never part of a plan to rob Boyd; that he believed that he and his co-defendants were going to Boyd's trailer to buy marijuana; and that Hill's robbery and murder of Warrick were independent acts wholly outside the realm of anything Madison planned or could have anticipated. (Ex. 7 at 951-79 (Madison's trial testimony)). Defense counsel explained at the postconviction evidentiary hearing:

> My position was to exonerate my defendant from him having knowledge that a felony or a murder was going to be committed. The fact that Mr. Hill had already committed [sic] the crime was not the issue as far as I saw it.

Page 25 of 30

The issue was whether or not Mr. Madison had reasonable belief to believe that a—a violent murder was going to take place. That was my strategy.

. . . .

There was no question whatsoever whether or not Dominique Hill committed that crime.

(Ex. 15 at 39-41; *see also id.* at 44-45).

The transcript of counsel's opening statement bears that out. In laying the

groundwork for Madison's defense, counsel told the jury:

**MR. BURNS:** What I expect to be shown by the state is that a tragic event occurred, that William Warrick at a very young age, 18 years old approaching 19 years of age was involved in the trade of selling marijuana, that he was involved in selling dime bags of marijuana, that people came to his house and sold marijuana. That's what I expect the state to show.

Now, what I expect to be put forth to you today is that there's going to be several testimonies come forth. There's going to be medical evidence. There's going to be forensic evidence. There's going to be sheriff's deputies from Louisiana. There's going to be sheriff's deputies from Santa Rosa County.

You will hear Deputy Baney testify. You will hear a bunch of people testify about what happened. You are going to hear three co-defendants testify, not Dominique Hill. Dominique Hill has already been tried and convicted.

**MR. ELMORE [Prosecutor]**: Judge –

**THE COURT**: Sustained. Sustained.

      **MR. BURNS**:  You are not going to hear Dominique Hill testify. You are going to hear three co-defendants testify. What you are going —you already heard Mr. Elmore state that the three co-defendants have been given plea agreements, that in fact in turn for their testimony and their cooperation, they are, in fact, being given what's called a cap that they've been promised that the state or the judge is not going to sentence them beyond twenty years state prison for their involvement in this particular matter.

      Now what you saw in the open presentation by Mr. Elmore was a pistol. It was a pistol that was being carried by Dominique Hill. What I want you to look carefully at concerning that pistol was the size of that pistol. That pistol was concealed by Dominique Hill.

      . . . .

      That's very, very important in the defense of this case because that—Mr. Hill's ability to conceal that pistol also gives him the ability to conceal his intentions as what he was going to do and he could conceal those intentions from everyone in that car including Mr. Madison . . . you're not going to hear that Mr. Madison specifically knew that Dominique Hill had a pistol, and that Dominique Hill intended to kill Mr. Warrick. You won't hear that.

(Ex. 4 at 97-100).

In light of the evidence against Madison, and given the nature of Madison's defense, counsel's comment on Dominique Hill's conviction did not constitute ineffective assistance. The First DCA reasonably concluded that counsel's strategic decision was reasonable, and that Madison was not prejudiced by counsel's comment. *See Strickland*, 466 U.S. at 690 ("[S]trategic choices made after thorough

investigation of law and facts relevant to plausible options are virtually unchallengeable."). Madison is not entitled to habeas relief on Ground Two.

## IV.    Certificate of Appealability is Not Warranted

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. *See* 28 U.S.C. § 2254 Rule 11(b).

"[Section] 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" *Miller-El*, 537 U.S. at 336 (quoting 28 U.S.C. § 2253(c)). "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 580 U.S. ___, 137 S. Ct. 759, 774 (2017) (quoting *Miller-El*, 537 U.S. at 327). Here, Petitioner has not made the requisite demonstration. Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." 28 U.S.C. § 2254 Rule 11(a). If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

## V.   Conclusion

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that:

1. The amended petition for writ of habeas corpus (Doc. 5), challenging the judgment of conviction and sentence in *State of Florida v. Regis Reymon Madison*, Santa Rosa County Circuit Court Case No. 2010-CF-140, be **DENIED**.

2. The District Court **DENY** a certificate of appealability.

3. The clerk of court close this case.

At Panama City, Florida, this <u>3rd</u> day of February, 2020.

/s/ *Michael J. Frank*

**Michael J. Frank**
**United States Magistrate Judge**

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**